UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ALAINE SHELTON, *On Behalf of Herself and All Others Similarly Situated*,<br><br>Plaintiff,<br><br>v.<br><br>THE J. M. SMUCKER COMPANY<br><br>   c/o CT Corporation System<br>   4400 Easton Commons Way, Suite 125<br>   Columbus, OH 43219<br><br>And<br><br>J.M. SMUCKER LLC<br><br>   c/o CT Corporation System<br>   4400 Easton Commons Way, Suite 125<br>   Columbus, OH 43219<br><br>       Defendants. | Case No.<br><br><u>**COMPLAINT**</u><br><br>JURY TRIAL DEMANDED |

Now comes Plaintiff, Alaine Shelton, by and through undersigned counsel, and for her Complaint against Defendants J.M. Smuckers Co., and J.M. Smuckers, LLC, states and alleges the following:

**INTRODUCTION**

1. This is a "collective action" instituted by Plaintiff as a result of Defendants' practices and policies of not paying their non-exempt employees, including Plaintiff and other similarly situated employees, for all hours worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all the hours they worked in excess of 40 each workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219.

2. Plaintiff also brings this action as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy violations of the Colorado Wage Act, Colo. Rev. Stat. § 8-4-101, *et seq*. ("CWA") and the Colorado Overtime and Minimum Pay Standards Orders ("COMPS"), 7 C.C.R. 1103-1 (together, "Colorado Wage Laws").

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction pursuant 28 U.S.C. § 1331, as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 216(b), *et seq*.

4. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the FLSA claims as to form part of the same case or controversy.

5. The Court has personal jurisdiction over Defendants as their headquarters and principal place of business is located in Ohio.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants' principal place of business is located in Orville, Ohio, Defendants conducts business throughout this District, and a substantial part of the events and omissions giving rise to the claims occurred in this District.

## PARTIES

7. At all material times, Plaintiff is and was a citizen of the United States, and a resident of Larimer County, Colorado.

8. At all material times, Defendant The J. M. Smucker Company is and was an Ohio corporation with its headquarters and principal place of business located at 1 Strawberry Lane, Orrville, Ohio 44667.

9. Defendant The J. M. Smucker Company may be served with process by serving its registered agent: CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

10. At all material times, Defendant J.M. Smucker LLC is and was an Ohio limited liability company with its headquarters and principal place of business located at 1 Strawberry Lane, Orrville, Ohio 44667.

11. Defendant J.M. Smucker LLC may be served with process by serving its registered agent: CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

12. At all material times, Defendant J.M. Smucker LLC is and was a wholly owned subsidiary of Defendant The J. M. Smucker Company.

13. Plaintiff's written consent to this action is attached as Exhibit 1.

14. Written consents to join this action, as and when executed by other individual plaintiffs, will be filed pursuant to 29 U.S.C. § 216(b).

## COVERAGE

15. At all material times, Plaintiff was an employee within the meaning of 29 U.S.C. § 203(e), Colo. Rev. Stat. § 8-4-101(5), and 7 C.C.R. 1103-1.

16. At all material times, Plaintiff was an employee engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207

17. At all material times, Defendants are and were employer within the meaning of 29 U.S.C. § 203(d), Colo. Rev. Stat. § 8-4-101(6), and 7 C.C.R. 1103-1.

18. At all material times, Defendants are an enterprise within the meaning of 29 U.S.C. § 203(r).

19. At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), and have enjoyed yearly gross revenue in excess of $500,000.

20. At all material times, Defendant The J. M. Smucker Company and its manufacturing subsidiaries, including Defendant J.M. Smucker LLC (collectively "the J.M. Smucker Enterprise"), have operated as a single "enterprise" within the meaning of 29 U.S.C. § 203(r)(1), and are joint employers.

21. Defendants perform related activities through unified operation and common control for a common business purpose, and part of their unified business model is the wage violations alleged in this Complaint.

22. Defendants operate with a high degree of interrelated and unified operations, share the same operating name, have the same headquarters, officers, and executive leaders and, upon information and belief, share common personnel and labor policies emanating from a common or centralized source.

23. Defendants represent themselves to the public as one (1) company, "Smucker's" or "The J.M. Smucker Company", with a corporate headquarters in Orville, Ohio and manufacturing plants in various locations across the country, and the J.M. Smucker Enterprise advertises open manufacturing positions at each plant on the same website (https://www.jmsmucker.com/careers).

24. Defendant The J. M. Smucker Company is and was an employer of employees of each of its manufacturing subsidiaries, including Defendant J.M. Smucker LLC, and is liable for wage violations to which they were subjected.

## **FACTUAL ALLEGATIONS**

25. Defendant The J. M. Smucker Company, a manufacturer of food and beverage products, operates approximately nineteen (19) manufacturing plants across the country with and/or through its wholly owned subsidiaries, including Defendant J.M. Smucker LLC.

26. At each of its manufacturing plants, Defendants employ hourly manufacturing employees who work on the production floor, including but not limited to: operators, technicians, mechanics, and warehouse workers (hereinafter "manufacturing employees").

27. From approximately November 2022 through September 2024, Plaintiff was employed by Defendants as a manufacturing employee at the manufacturing plant located in Longmont, Colorado. Specifically, Plaintiff worked as a quality assurance technician.

28. Plaintiff and other similarly situated manufacturing employees had the same and/or substantially similar job duties and/or responsibilities and were subjected to the same policies and procedures.

29. Plaintiff and other similarly situated manufacturing employees were classified as non-exempt.

30. Plaintiff and other similarly situated manufacturing employees were paid an hour wage.

31. Plaintiff and other similarly situated manufacturing employees regularly worked more than 40 hours per week.

**(Failure to Pay for All Hours Worked)**

32. Defendants paid Plaintiff and other similarly situated manufacturing employees only for work performed between their scheduled start and stop times, regardless of when they clocked in or clocked out.

33. Plaintiff and other similarly situated manufacturing employees were not paid for the work Defendants required them to perform before and after their scheduled start and stop times, including but not limited to: (a) changing into and out of their personal protective equipment, including a shirt, pants, boots, hard hat, gloves, safety glasses, hairnet, and/or beard guard; (b) walking through boot sanitizing powder and/or boot scrubber and washing their hands; (c) retrieving supplies and equipment; and (d) walking to and from their assigned area of the manufacturing floor.

34. Defendants required manufacturing employees to be at their work areas on the production floor attending their transition meeting (when employees coming off shift meet with employees coming on shift to discuss manufacturing issues) or otherwise performing their manufacturing work no later than their scheduled shift start time. Likewise, Defendant's manufacturing employees were not permitted to leave their work areas until after their scheduled shift stop time. As such, Plaintiff and similarly situated production employees were required to arrive at work early and perform their pre-shift work before their scheduled start times and leave work late in order to perform their post-shift work after their scheduled stop times. However, Defendants did not pay them for this pre- and post-shift work.

35. The pre-shift work—*i.e.*, changing into personal protective equipment, sanitizing their boots and washing their hands, retrieving supplies and equipment, and walking to the assigned area of the manufacturing floor—took upwards of approximately 10 to 20 minutes or more.

36. The post-shift work—i.e., walking from the manufacturing floor and changing out of personal protective equipment—took upwards of approximately 10 minutes or more.

37. In addition, Plaintiff and other similarly situated manufacturing employees were frequently required to start performing their manufacturing work on the production floor before

6

their shift start times and required to continue performing their manufacturing work on the manufacturing floor after their shift end times to complete tasks that were not finished at the end of their shifts.

38. Defendants knew that Plaintiff and other similarly situated manufacturing employees performed this pre-shift and post-shift work because they required them to perform it and supervisors observed them performing it.

### (Failure to Pay for Donning Time)

39. Before Plaintiff and other similarly situated manufacturing employees began their shifts, they donned personal protective equipment, including a shirt, pants, boots, hard hat, gloves, safety glasses, hairnet, and/or beard guard.

40. Wearing personal protective equipment was necessary because Plaintiff and other similarly situated manufacturing employees could not safely perform their work without it. It protected Plaintiff and other similarly situated manufacturing employees from various injuries, including head, hand, foot, eye, ear, and other bodily injuries.

41. Defendants required Plaintiff and other similarly situated manufacturing employees to put the personal protective equipment on and take it off at work so that it was maintained in a sanitary and reliable condition. Defendants did not want Plaintiff and other similarly situated manufacturing employees to take their personal protective equipment home.

42. The time Plaintiff and other similarly situated manufacturing employees spent donning their personal protective equipment was an integral and indispensable part of their principal activities, was required by Defendants and the Occupational Safety and Health Administration ("OSHA") and was performed for Defendants' benefit in that it helped keep the

7

plant floors safe and sanitary, and helped promote a more safe, sanitary, and efficient manufacturing process.

43. Donning personal protective equipment is an intrinsic element of the manufacturing process of food and beverage products. Plaintiff and other similarly situated manufacturing employees cannot dispense with donning personal protective equipment if they are to perform their manufacturing work.

44. Plaintiff and other similarly situated manufacturing employees were not paid for time spent donning their personal protective equipment.

**(Failure to Pay for Sanitizing Hands and Boots)**

45. In addition to donning their personal protective equipment, Plaintiff and other similarly situated manufacturing employees were required to sanitize their boots (by walking through a floor powder and/or boot scrubber) and wash their hands.

46. Sanitizing their boots and washing their hands was necessary in order for Plaintiff and other similarly situated manufacturing employees to perform their manufacturing work maintained in safe and sanitary.

47. The time Plaintiff and other similarly situated manufacturing employees spent sanitizing their boots and washing their hands was an integral and indispensable part of their principal activities, was required by Defendants and was performed for Defendants' benefit in that it helped keep the plant floors safe and sanitary, helped keep the food and beverage products free of contaminates, and helped promote a more safe, sanitary, and efficient manufacturing process. Washing their hands was also required by OSHA and the Food and Drug Administration.

48. Sanitizing boots and washing hands is an intrinsic element of the manufacturing process of food and beverage products, and employees cannot dispense with taking such sanitization measures.

49. Plaintiff and other similarly situated manufacturing employees were not paid for time spent sanitizing their boots and washing their hands.

**(Failure to Pay for Retrieving Supplies and Equipment)**

50. After donning their personal protective equipment, Plaintiff and other similarly situated manufacturing employees retrieved supplies and/or equipment necessary to perform their manufacturing work.

51. Getting supplies and equipment was necessary because Plaintiff and other similarly situated manufacturing employees could not perform my manufacturing work without them.

52. Plaintiff and other similarly situated manufacturing employees had to retrieve their supplies and equipment before their shift start times because they were not kept in their assigned work area.

53. The time Plaintiff and other similarly situated manufacturing employees spent retrieving supplies and equipment necessary to perform their manufacturing work was an integral and indispensable part of their principal activities, was required by Defendant, and was performed for Defendant's benefit.

54. Retrieving tools and equipment is an intrinsic element of the manufacturing process and was a necessary task because Plaintiff and other similarly situated manufacturing employees could not perform their manufacturing work without them.

55. Plaintiff and other similarly situated manufacturing employees were not paid for the time spent retrieving supplies and equipment necessary to perform their manufacturing work.

**(Failure to Pay for Post-donning Walk Time)**

56. After donning their personal protective equipment, walking through a boot scrubber, and washing their hands, Plaintiff and other similarly situated manufacturing employees walked to their assigned area of the manufacturing floor. Such time constitutes "post-donning walk time" and was part of their "continuous workday".

57. Plaintiff and other similarly situated manufacturing employees were not paid for their post-donning walk time.

**(Failure to Pay for Performing Manufacturing Work)**

58. Plaintiff and other similarly situated manufacturing employees frequently started performing their manufacturing work before their shift start times and were often required to work past the end of their shift times to complete manufacturing tasks that were not finished at the end of their scheduled shift stop time.

59. The time Plaintiff and other similarly situated manufacturing employees spent performing their manufacturing work was an integral and indispensable part of their principal activities, was required by Defendants, and was performed for Defendants' benefit.

60. Plaintiff and other similarly situated manufacturing employees were not paid for the time spent performing their manufacturing work before their shift start time after their shift stop time.

**(Failure to Pay for Pre-doffing Walk Time)**

61. After their shifts ended, Plaintiff and other similarly situated manufacturing employees walked from the manufacturing floor to the area in which they changed out of their personal protective equipment. Such time constitutes "pre-doffing walk time" and was part of their "continuous workday".

62. Plaintiff and other similarly situated manufacturing employees were not paid for their pre-doffing walk time.

**(Failure to Pay for Doffing Time)**

63. After their shifts ended, Plaintiff and other similarly situated manufacturing employees doffed their personal protective equipment.

64. The time Plaintiff and other similarly situated manufacturing employees spent doffing their personal protective equipment was an integral and indispensable part of their principal activities, was required by Defendants and OSHA, and was performed for Defendants' benefit in that it helped keep the manufacturing floor safe and helped promote a more safe and efficient manufacturing process.

65. Doffing personal protective equipment is an intrinsic element of Plaintiff and other similarly situated manufacturing employees' job duties. Plaintiff and other similarly situated manufacturing employees cannot dispense doffing their personal protective equipment if they are to perform their manufacturing work.

66. Plaintiff and other similarly situated manufacturing employees were not paid for time spent doffing their personal protective equipment.

**(Failure to Pay Overtime Compensation)**

67. As a result of Plaintiff and other similarly situated manufacturing employees not being paid for all hours worked, Plaintiff and other similarly situated manufacturing employees were not paid overtime compensation for all of the hours they worked over 40 each workweek.

68. The time Plaintiff and other similarly situated employees spent performing the unpaid work referenced above was in addition to the 40 or more hours they regularly worked between their scheduled start and stop times each workweek, and thus, constituted overtime hours

11

worked, for which they were/are entitled to overtime compensation at a rate of one and one-half times their regular hourly rate of pay.

**(Defendants Willfully Violated the FLSA and the Colorado Wage Laws)**

69. Defendants knowingly and willfully engaged in the above-mentioned violations of the FLSA and the Colorado Wage Laws.

70. Defendants knew and otherwise showed reckless disregard as to whether their conduct in failing to properly pay Plaintiff and other similarly situated employees for the unpaid work referenced above violated the law.

71. Defendants had/has a common practice and policy of requiring Plaintiff and other similarly situated employees to perform the unpaid work referenced above and not compensating them for time spent performing such work.

72. Defendants knew that Plaintiff and other similarly situated employees were performing the unpaid work because Defendants required them to perform it and supervisors observed them performing it.

73. Defendants, who determined the work schedules of Plaintiff and other similarly situated employees, also knew that the time Plaintiff and other similarly situated employees spent performing such unpaid work was in addition to the 40 hours or more that Defendants scheduled them to work, and thus, knew that Plaintiff and other similarly situated employees should have been paid overtime compensation for such unpaid work.

74. Defendants knew or should have known that their policies and practices violate the law, and Defendants did not make and have not made a good faith effort to comply with the FLSA or the Colorado Wage Laws. Rather, Defendants knowingly, willfully, and/or with reckless disregard of the law has carried out their unlawful pattern, practice, and policy of not paying

Plaintiff other similarly situated manufacturing employees for all hours worked. Defendants' method of paying Plaintiff and other similarly situated employees was not based on a good faith and reasonable belief that their conduct complied with the law.

75. Upon information and belief, Defendants failed to make, keep and preserve accurate records of all of the unpaid work performed by Plaintiffs and other similarly situated manufacturing employees.

## FLSA COLLECTIVE ACTION ALLEGATIONS

76. Plaintiff brings Count One of this action on her own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendants' unlawful conduct.

77. The collective class which Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff is herself a member, is composed of and defined as follows:

> All current and former full-time non-exempt manufacturing employees who worked at one or more Defendants' manufacturing plants in the United States at any time during the three-year period prior to the filing of this action through the present. ("FLSA Collective Class").

78. Plaintiff is unable, at this time, to state the exact size of the FLSA Collective Class, but upon information and belief, it consists of more than 1,000 individuals.

79. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid wages, unpaid overtime compensation, liquidated damages, attorneys' fees, and costs under the FLSA. In addition to Plaintiff, numerous current and former manufacturing employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and is acting on behalf of their interests as well as her own in bringing this action.

80. The similarly situated manufacturing employees are known to Defendants and are readily identifiable through their payroll records. These individuals may readily be notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid wages, unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

81. Although the exact amount of damages may vary among the similarly situated employees in proportion to the number of hours they worked, damages for each individual can be easily calculated using a simple formula.

## COLORADO CLASS ACTION ALLEGATIONS

82. Plaintiff brings Count Two of this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of herself and all other members of a Colorado class defined as:

> All current and former full-time non-exempt manufacturing employees, who worked at one or more Defendants' manufacturing plants in Colorado at any time at any time during the three-year period prior to the filing of this action to the present. ("Colorado Class").

83. The Colorado Class is so numerous that joinder of all class members is impracticable. Upon information and belief, the Colorado Class consists of more than 500 individuals.

84. There are questions of law or fact common to the Colorado Class, including but not limited to the following: (a) whether Defendants failed to pay overtime compensation to its non-exempt manufacturing employees for hours worked in excess of 40 each workweek; and (b) what amount of monetary relief will compensate Plaintiff and other members of the Colorado Class for Defendants' violations of the Colorado Wage Laws, Colo. Rev. Stat. § 8-4-101, *et seq.*, 7 C.C.R. 1103-1.

85. The claims of Plaintiff are typical of the claims of other members of the Colorado Class. Plaintiff's claims arise out of the same uniform course of conduct by Defendants and are based on the same legal theories as the claims of the other Colorado Class members.

86. Named Plaintiff Alaine Shelton will fairly and adequately protect the interests of the Colorado Class. Her interests are not antagonistic to, but rather are in unison with, the interests of the other Colorado Class members. Plaintiff's counsel has broad experience in handling class action wage-and-hour litigation and is fully qualified to prosecute the claims of the Colorado Class in this case.

87. The questions of law or fact that are common to the Colorado Class predominate over any questions affecting only individual members. The primary questions that will determine Defendants' liability to the Colorado Class, listed above, are common to the class as a whole, and predominate over any questions affecting only individual class members.

88. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Colorado Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Colorado Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE

**(Violations of Fair Labor Standards Act)**

89. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

15

90. Defendants' practice and policy of not paying Plaintiff and other similarly situated manufacturing employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek violated the FLSA, 29 U.S.C. §§ 201-219 and 29 CFR § 785.24.

91. Defendants intentionally failed to pay Plaintiff and other similarly situated employees required overtime compensation for hours worked in excess of 40 per workweek.

92. Defendants' conduct in failing to pay Plaintiff and other similarly situated employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek was willful and/or in reckless disregard of the rights of Plaintiff and those similarly situated.

93. Defendants' actions and/or omissions were not in good faith.

94. By engaging in the above-mentioned conduct, Defendants willfully, knowingly, and/or recklessly violated the provisions of the FLSA.

95. As a result of Defendants' practices and policies, Plaintiff and other similarly situated manufacturing employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

## COUNT TWO

### (Violations of the Colorado Wage Laws)

96. Plaintiff, on behalf of herself and the Colorado Class, realleges and incorporates by reference the foregoing allegations as if fully rewritten herein.

97. Defendants' practices and policies of not paying Plaintiff and other similarly situated employees for all time worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all of the hours they worked over 40 each workweek,

violates the Colorado Wage Laws, Colo. Rev. Stat. § 8-4-101, *et seq*., 7 C.C.R. 1103-1.

98. Defendants intentionally failed to pay Plaintiff and other similarly situated employees required overtime compensation for hours worked in excess of 40 per workweek.

99. Defendants' conduct in failing to pay Plaintiff and other similarly situated employees for all time worked and overtime compensation at a rate of one and one-half times their regular rate of pay for all the hours they worked over 40 each workweek was willful and/or in reckless disregard of the rights of Plaintiff and other similarly situated employees.

100. Defendants' actions and/or omissions were not in good faith.

101. By engaging in the above-described practices and policies, Defendants willfully, knowingly and/or recklessly violated the Colorado Wage Laws.

102. As a result of Defendants' practices and policies, Plaintiff and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the Colorado Wage Laws.

**PRAYER FOR RELIEF**

103. WHEREFORE, Plaintiff, and all those similarly situated, collectively pray that this Honorable Court:

    (a) Issue an order permitting this litigation to proceed as a collective action pursuant to the FLSA;

    (b) Order prompt notice to all class members that this litigation is pending and that they have the right to "opt in" to this litigation pursuant to 29 U.S.C. § 216(b);

    (c) Issue an order certifying the Colorado Class pursuant to Fed. R. Civ. R. 23(a) and (b)(3);

    (d) Award Plaintiff and the classes she represents actual damages for unpaid wages;

(e) Award Plaintiff and the classes she represents liquidated damages in an amount to the unpaid wages found due to Plaintiff and the classes under to the FLSA;

(f) Award Plaintiff and the Colorado Class she represents liquidated damages calculated as an additional two (2) times the amount of unpaid wages found due to Plaintiff and the Colorado Class under the Colorado Wage Laws;

(g) Award Plaintiff and the classes she represents pre- and post-judgment interest at the statutory rate;

(h) Award Plaintiff and the classes she represents attorneys' fees, costs, and disbursements; and

(i) Award Plaintiff and the classes she represents further and additional relief as this Court deems just and proper.

## JURY DEMAND

104. Pursuant to their rights under the Constitution of the United States, U.S. CONST. amend VII, and FED R. CIV. P. 38(a), Plaintiff hereby demands trial by jury.

Respectfully submitted,

/s/ *Matthew S. Grimsley*
Matthew S. Grimsley (OH 0092942)
Anthony J. Lazzaro (MI P86195)
Lori M. Griffin (OH 0085241)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, OH 44022
Telephone: 216-696-5000
Facsimile: 216-696-7005
matthew@lazzarolawfirm.com
anthony@lazzarolawfirm.com
lori@lazzarolawfirm.com

Attorneys for Plaintiff